Nott, J.,
delivered the opinion of the court:
This is an application in effect, though not in purpose, to have the law declared to be that the wife of a judge of a United States court may appear at its bar, and, being found duly qualified, be admitted to the practice of the law before her husband. This effect of the application has probably not entered the mind of the applicant, but it is nevertheless the duty of the court to survey the entire limits of the legal situation, and foresee the effects which must necessarily follow the guant of her petition. For, if she be lawfully entitled to admission to this bar, no discrimination can be made between her and every other married woman, properly qualified, domiciled in the District of Columbia; and if it be true that there is no law to pre-venta woman from acquiring tbe office of anjattorney, it is equally true that there is no law to forbid the wives of the judges and law-officers of the G-overnment from acquiring the same privilege. Therefore, if we decide that this application should be granted, we must at the same time decide] that two beings whom the common law regards in every material interest, as nearly as possible, as one, can discharge, without detriment to the interests of public justice, the dissimilar duties of arbiter and advocate.
*350 The applicant comes before us a married, woman, domiciled in the District of Columbia, where the common law, except as it may have been altered by statute, prevails. It is needless to say that a system of law which prohibited the husband and wife from occupying the legal relations of witnesses for or against each other, and which scrupulously assured to every suitor an impartial tribunal, never contemplated as a possibility that the rights of third persons might be conñded to judges liable to be swayed by the most powerful influence known to the law or to humanity. That there has been no express provision by statute, and that there was no exceptional rule at common law, to prevent any such dangerous and scandalous practice, certainly indicates that the law has never been considered to authorize the admission of women to the bar. It is not to be understood that there is any immediate likelihood that the wives of the judges or law-officers of the Government will descend to any such impropriety. Nevertheless, two things may be said of the matter: First, that the administration of justice should not be left to depend upon any man’s or woman’s sense of propriety; and, secondly, that whenever the wife of a judge or attorney-general is admitted to practice, she will speedily acquire a very lucrative practice, which may sufficiently piece out her husband’s salary, but which will as quickly occasion suspicions of partiality and corruption on the part of that branch of the Government whose power and usefulness peculiarly rest upon the respect and confidence of the community
Before this application can be granted there are three questions which must be considered: First, is there any statutory law allowing women to practice in the courts of the United States % Second, if there be none, was there any precedent of the kind at the time when this court was established ? Third, if there is neither positive enactment nor established precedent to sustain this application, would a woman be entitled to admission at common law %
All of these questions, it is confessed, must be answered in the negative. Nevertheless, it is insisted that, in the absence of positive legal prohibition, the enlarged liberalism of modern society and the statutory changes which have been made in the law of husband and wife will warrant the court in admitting a woman to its bar. There is, indeed, a statute relating to the *351 separate property of the wife, but this is not a question of property. Admission to the bar constitutes an office. Its exercise is neither an ordinary avocation nor a natural right. It is an artificial employment, created not to give idle persons occupation, nor needy persons subsistence, but to aid in the administration of public justice. The question is not whether this and that person can make a living at the bar, but whether their admission to the bar will assist in carrying out the purposes of jurisprudence. Moreover, the statute, which it was said on argument has “thoroughly exploded” the common-law notion that husband and wife are one, is copied from the New York Married women Act, (Session Laws, 1849, p. 528,) as to which it has been held by the highest court in the State that it changes the common law only in the particulars specifically named; and hence, that while a married woman may convey or devise property under the act free from her husband’s control, nevertheless, if she die intestate, her husband will take her personalty as heir at common law. (Ransom v. Mooli, 22 N. Y. R., p. 110.) The Married women Act for the District of Columbia (16 Stat. L., p. 45) does nothing more than allow a married woman to take and control “ her sole and separate property,” to convey or devise it, to sue or be sued “ in all matters having relation to it.” The statute expressly recognizes the fundamental principle of the common law, that husband and wife, being one, cannot traffic with each other when it excepts from its enabling provision a “gift or conveyance from her husband.'”
The common law has always regarded the family as the unit of society; the civil law the individual. Hence at the civil law marriage was little more than a partnership, into which individuals could enter at will, the terms of which they could vary by agreement, the profits of which were to be the property of each, and the bands of which they might dissolve at pleasure. At the common law the family has always been regarded as a sacred entirety, with regard to which the rights and freedom and convenience and wishes of every person connected with it must yield. Its bands were indissoluble, and the duties and obligations connected with it were to be scrupulously enforced. For an absolutely Christian and moral community, whose property consists chiefly of land, the common law in respect to marriage would still continue to be the perfection of *352 human reason. But the unhappy recurrence of drunken or profligate or spendthrift husbands with patient and industrious wives, and the great accretions of personal upon real property in modern times, have rendered some changes in the common law desirable, which are for the most part concessions by the mass of society in favor of its unfortunate exceptions. The common law was not unmindful of the natural rights of women or of wives, but, regarding the family as the unit of society, it was inevitable that it should cast the burdens and responsibilities of life upon its head. If the husband possessed land before marriage, the wife by marriage instantly acquired an inchoate estate in it for her future support. If he should acquire land after marriage, for the same reason it became in a measure subjected to her, and no conveyance to him could be devised which would elude her right to dower. If an injury was done to her inheritance, he was compelled to unite with her in her suit and assume the responsibility of its expenses; but if he died before judgment, the action survived to her alone. If an estate was given to both or was. acquired by purchase, they took neither as joint tenants nor as tenants in common.. For the common law, regarding them as but one person, held that they could not take by moieties and be both seized of an entirety; that neither could sell without the consent of the other, and that the survivor would take the whole. He was liable for her debts before marriage, though they were concealed from him; and for them his goods might be sold and his body thrown into prison. Ho was bound to provide for her in a manner suitable to her condition in life, and if he abandoned her, or they separated by consent, he lost not the liability, and when he sent her away he was said “to send his credit with her.” Nay, if she abandoned him and returned and he refused to receive her, his liability nevertheless returned with her, and he might be sued for her support. Her frauds and torts, committed during coverture, were his jointly with her, though he were ignorant or absent when they were committed, and if they were done by her in his presence, they were his alone. If the remedy sought was by imprisonment, though the wrong was exclusively hers, he only was liable to be imprisoned.
When we pass from the relations of husband and wife to the office of attorney, we find certain responsibilities inseparable *353 from it which seem inconsistent with the holding of the office by .a woman. In cases of misconduct by an attorney he may be attached by th'e court and imprisoned, but if the attorney were a married woman, she might come in and say that the misconduct occurred in her husband’s- presence, and that at common law it was by his compulsion. She might misapply the funds of a client, or be guilty of gross neglect or fraud, and the husband be sued at common law for the wrong which she committed as attorney.
In the case now before us it has been intimated that the admission of the party is sought- with the husband’s knowledge, and that she may be appointed by his consent. But a court cannot make an exceptional rule, which will apply to one party and not to another 5 nor can it change the existing law, so as to hold a woman to the full responsibility of an attorney ; nor can it change the legal relations of husband and wife “by consent,” any more than it can grant divorces “by consent.”
So far as the rule of this court is concerned, it contemplates only the admission of men. Its language is that “ no counsel will be permitted to practice in the court unless he is a man of good moral character.” It cannot be denied that the masculine gender, which is generally used in statutes, frequently embraces the feminine; but if a masculine word receives any such latitude of construction, it is when it is applied to those cases where law and custom recognize men and women as standing upon the same ground of right or responsibility; the general rule being that words are to be construed according to their usual meaning. Certainly it is not obligatory on courts to construe them otherwise, unless that is made obligatory by legislation. There is no such legislation affecting this court or its rules, and certainly when the rules were made the word “ man” was used in its usual and literal meaning, and, so used, expressed all that the court then intended.
If a statute require that the owner of a city lot shall remove the snow from his sidewalk, it will be held to extend to men, women, and children; for the statute is directed indiscriminately tó the owners of property, and pre-existing law and usage have regarded the owners of property as liable to certain charges ■upon it, without reference to their age or sex. ■ But the word “man,” in a statute exacting military service, would not be construed to include women, for the pre-existing law, that is to say 23 C 0 *354 the established usages of society, have never regarded women as liable to rend.er such service. For the same reason the word in the rule cannot be held to include women, unless women have heretofore been regarded as capable of filling this office. If the word “ man ” in this rule can be enlarged, against all preexisting usage, by the loose construction of a court, so as to include men and women, then the word “man,” in a statute enforcing military service, in like manner can be extended at the will of the judiciary. Where a statute provides that all able-bodied citizens between certain ages shall perform military service, and then, like the Conscription Act 3d March, 1863, (12 Stat. L., § 2, p. 731,) excepts a “ father” in one case, a “ son”' in another, and a “brother” in a third, and finally declares “ that no persons except such as are herein excepted shall he exempt,” it would be within the discretion of a court to say that the stat-u e included women in the term “ persons.” The rule of construction unquestionably is that a statute can never be extended to a new subject-matter, nor used to alter what under prevailing usage exists, by giving to its words a meaning which, so far as regards that statute or that subject-matter, they were never before supposed to possess. If a judge could at his fancy so-construe this rule of the court as to hold that women may be attorneys, I do not see upon what legal ground he would be restrained from holding that they must be soldiers; for the difference between the two is simply a distinction of taste or sentiment, as to which the opinions of mankind change and vary. Some persons who regard women as eligible for admission to the bar would recoil from exacting of them military service. Others would think that both were equally beyond their sphere, I have been at the bar and in the military service, and my experience leads me to the conclusion that women are as well fitted for the one as for the other. Another person,having had similar experiences, may reach an opposite result. It is said that modern ideas have brought down many occupations within the reach of women which were supposed to belong exclusively to men; but in nothing have modern ideas done so much of this leveling as in the art of war. In the hand-to-hand conflicts of antiquity women were manifestly unable to cope with the physical natures of . men, and from necessity were exempt. But hánd-to-hand conflicts are as obsolete as the wager of battle. The light breech-loading carbine demands activity rather *355 than strength. Woman as a soldier would have little to do besides marching, shooting, and being shot. It is said that a well-read, intelligent, honest woman will make a better attorney than an ignorant, vicious, unscrupulous man. This is true; but it is equally true that a healthy, active woman will make a better soldier than a decrepit man. Some considerations of public policy also intervene in favor of the latter course. There may be occasions when the conscription of women as soldiers if permissible at law, will seem to verge on absolute necessity; but as to attorneys, it can hardly be supposed that there will ever be a time when their scarcity will greatly endanger the public safety. These reflections I have indulged in, not from any serious apprehensions of their realization, but to illustrate how dangerously fallacious is the reasoning which invites a court to do what it pleases with the unwritten law of the land.
It is not for the judiciary to intermeddle with'the question as to what is or what is not the “proper sphere of woman.1’ It is enough for judges to know that her legal position is by an unwritten law interwoven with the very fabric of society, and that when society frames constitutions of government it places them upon a foundation of its own immemorial usages, which society can reconstruct, but as to which it may be doubted whether even the legislative power has authority to overturn.
It is said in the argument that the whole subject of the admission of attorneys is within the discretion of a court; but this is not strictly true. Admission to the bar constitutes an office. In the first days of attorneys of record the office existed only by appointment of the Crown, and during our earlier history the power of appointment was exercised exclusively by the colonial governors. In both England and this country the power of appointment was conferred upon courts by statute. (4 Henry IV, chap. 18; New York Constitution 1777, sec. 27; In re Cooper, 22 N. Y., p. 80.) The appointment to the office by a court is a judicial act. (Ex parte Secombe, 19 How., p. 9.) Eefusal to admit a person conceded to be properly qualified is a judgment subject to the reversal of an appellate court. (In re Cooper.) Disbarring an attorney is likewise a judicial act, in like manner subject to be reversed. (Ex parte Heyfron, 7 How. Miss., p. 127. Ex parte Robenson, S. C., present term.) Courts of the United States, for convenience, recognize admission to the bar of State courts as proof *356 of qualifications, and accept the introduction by a member of their own bar as testimony of personal and professional good character; but these are merely evidence on which the court acts, and its action remains, as before, a judicial decision. (Ex parte Garland, 4 Wall., p. 333.)
It is to be understood that the decision of this court does not rest upon those grounds which would make its judgment final. We do not, in legal effect, pass upon the individual application before us, but refuse to act upon it for want of jurisdiction. Our decision is not necessarily final, and there is express authority for saying that if we err, the Supreme Court can review our error and give relief to the applicant by mandamus. (Roberts’ Mandamus, 8 C. Cls. B., p. 118.) The position which this court assumes is that under the Constitution and laws of the United States a court is without power to grant such an application, and that a woman is without legal capacity to take the office of attorney.